My name is Alexander Munches. I'm with the State Defender's Office and I represent David Olson. Children's testimony in sexual assault prosecutions is often inadequate. To address recurring problems with proof, the legislature created a hearsay exception for outcry evidence, namely evidence that the child previously complained, out of court, to another person. Today I would like to focus on the State's misuse of such evidence to convict Mr. Olson. To convict him despite its own problems with proof, the absence of a spontaneous outcry, of physical evidence, of witnesses, and of admissions. A brief factual summary is in order. The State contended that Mr. Olson sexually assaulted V.S. numerous times between 2012 and 2014. V.S.'s initial accusation did not occur in 2012 or 2013. It occurred in 2014 after her mother confronted her about touching her cousin in a sexual manner. At her mother's direction, V.S. later repeated this and other accusations in separate conversations to her stepfather, aunt, grandmother, and their godfamily. After these conversations and again at her mother's direction, V.S. then participated in a forensic interview. On this basis, the State ultimately charged Mr. Olson with three counts of predatory criminal sexual assault of the child. Now there are two problems that really stick out in this case. That's the absence of a 11510 hearing regarding V.S.'s out of court accusations, and similarly, the, I guess, presence of the State's elicitation of V.S.'s mother's testimony that V.S. spoke credibly out of court when she was accusing Mr. Olson. These are the two major problems in this case. Now Section 11510 in this case was simply not followed. This is important because the State's case in chief primarily consisted of outcry evidence. That is the repetition by several witnesses of V.S.'s out of court accusations. To put it mildly, outcry evidence is not inherently reliable, so Section 11510 governs its admission very closely. Subsection A in particular identifies what statements are at issue. Out of testimony at trial, eight statements really were at issue. That's two from V.S. that she told her mother and that she told her counselor. That is five from V.S.'s mother, V.S. told her, her husband, V.S.'s aunt, V.S.'s grandmother, and V.S.'s godfamily. And then finally, one from a detective, V.S. told a counselor. Now under Subsection D, normally, the State gives notice of which statements it wants to bring in as substantive evidence of guilt. Then later, under Subsection B, the trial court has a hearing on the time, content, and circumstances. And really this hearing is the most important part. Do you think that the defense lawyer has to object? Do you think that the attorney for defendant has any burden here? So I think that in this particular case, the attorney wanted to bring the statements in for impeachment purposes, not substantively. Which statements? Oh, excuse me. Yes, defense counsel. I think that defense counsel wanted to bring in statements for impeachment purposes, not for substantive evidence of defendant's guilt. And so normally, the defense attorney never wants to bring in out-of-court accusations against their client for substantive purposes, for the State's own use. And so typically, under this Section 115.10, the burden initially rests with the State. The State needs to identify these statements, which ones they're going to use to try to convict the defendant. And then once the State does that, the court says, okay, let's start this process. Subsection B, let's have this hearing. Let's look at the time, major circumstances. And then critically, the linchpin really is reliability. And the trial court, looking at the witnesses, understanding the parties' arguments, can really make that final assessment. So the State's argument that there's no prejudice here, how do you address that since this is a little bit different, this is a twist on the norm? Sure. There's a lot of prejudice here. The State's case was primarily based on V.S.'s out-of-court accusations. Really, the linchpin in the State's case was V.S.'s credibility. But you just said the defendant wanted to use it for impeachment purposes. Not as substantive evidence, yes. Right. So that's a big difference. Sure. You don't really even need a hearing if you're going to put in prior inconsistent statements. You do if they're coming in as substantive evidence of guilt. But that's not, you just assured me that that's not what it was coming in for. No, so the State brought it in for substantive evidence of guilt, and the defense brought it in, wanted to bring it in for impeachment purposes. Okay, so you do acknowledge the State wanted to bring it in for substantive evidence. Yes, oh yes, absolutely. Yes, and that's why they submitted that. I was getting the wrong impression from you. Oh, excuse me. That's okay. And that is really why the State introduced IPI Criminal Number 11.66 under Subsection C. They wanted to use these statements as evidence of Mr. Olson's guilt. And, you know, this is really what the statute's all about, bringing in statements, trying to help the State prove up their cases, because the State historically has found it very difficult to do so. And so this immense focus on out-of-court accusations led to a particularly absurd result in this case. That's where the State repeatedly asked Villas' mother to comment on the veracity of her out-of-court accusations. Now, as a general matter, the parties agree witnesses aren't supposed to be doing this sort of thing. Our appeal to the State denies that it asked Villas' mother to do this, but the record proves otherwise. The State asked Villas' mother, when Villas lied, were you able to tell? Did she give you signs? They repeated these sorts of questions. What were they? When she was talking about her cousin, did she give some of those signs? When she accused Mr. Olson, did she give those signs? And Villas' mother, at the State's behest, participated in this line of questioning. Villas' mother explicitly told the jury she could tell when Villas was lying out of court. And Villas' mother said she had made sure that Villas was telling the truth before she brought this case to the police. It was clear error for the State to cast Villas' mother as a sort of human lie detector. Now, these are two errors that we've identified. These errors are significant because the evidence in this case was closely balanced. As this Court knows, that doesn't mean that there was insufficient evidence of guilt. Rather, it's under a qualitative, common-sense assessment within the context of the case that one sees that the evidence of Mr. Olson's guilt was not overwhelming. Again, the State's case rested primarily on the credibility of the S. No physical evidence, no witnesses, no admissions, and there was no spontaneous outcry. On the contrary, the first outcry occurred years after the alleged abuse began. Notably, Villas' testimony was not corroborated by family members. That is to the extent that neither her mother, her aunt, nor another member of the McCodd family expected any abuse contemporaneously. Finally, the chalkboard even ejected a verdict on count one. This is the only count that alleged a specific date. And the basis of this was apparently that Villas' credibility out of court was not sufficient, you know, to support the charge. So, in short, this evidence in this case is closely balanced. Mr. Olson has identified at least two errors. And when the evidence in the case is closely balanced, no error should be permitted to tip the scales of justice against the accused. Accordingly, Mr. Olson respectfully requests this Court reverse the normand for a new trial. Thank you. Thank you. Counsel. Good afternoon, Your Honor. Good afternoon, Your Honors. Counsel. My name is Erin Wilson-Langler, and I appear on behalf of the state. Please speak up and slow down. My apologies, Your Honor. That does not do anything except record. Oh, the microphone? Right. My apologies. It doesn't help you a bit. It doesn't help us either. I'll do my very best. Thank you. Your Honors, defendant presents a number of assignments of error in this case, all of which defendant concedes are forfeited errors and none of which establish reversible error. First, defendant addresses the lack of a Section 115-10 hearing in this case. However, defendant just conceded the fact that most of these statements come in through defense counsel's questioning and not through the state. In fact, in his opening brief, defendant only cites the three pages of the record on which he alleges these erroneous hearsay statements come in, and each of these pages contains statements that were elicited by defense counsel, not the state. The state is not under a burden to initiate Section 115-10 procedures when defense counsel intends to use statements for impeachment purposes. But you did use substantive of the statement substantively. Your Honor, there were some statements that came in, some for substance, some for non-hearsay purposes. Let's talk about the substantive ones. Your Honor, some of the statements came in as admissible non-hearsay. In fact, there were three separate reasons for which the testimony relating to the conversation between B.S. and Amanda, three reasons why those statements were admissible. First, defense counsel opened the door to such testimony during its opening statement, wherein defense counsel explicitly stated there was a conversation between Amanda and B.S. during which B.S. relayed to Amanda that defendant had touched her. Therefore, Amanda's and B.S.'s subsequent testimony stating that exact phrasing was merely a repetition of what defense counsel had already told the jury. Yeah, but opening statements are not evidence. No, they're not evidence, Your Honor. However, defense counsel can open the door to such evidence during opening statements. Yes, you're right. Had there been some discussion about that pre-trial? Motions in Lemonade, anything like that, the defendant opened the door on? No, Your Honor. However, there was a sidebar discussion where the state had objected to a portion of defense counsel's opening statements because defense counsel was attempting to bring in some information that would be protected under rape shield laws, and the trial court specifically found that defense counsel's opening statement was creating the assinuation that B.S. was fabricating these allegations against defendant, and the trial court specifically ruled that the evidence or the testimony of the conversation between B.S. and Amanda became admissible to refute those allegations of fabrication, which is the second reason why this testimony became admissible non-hearsay, because it was offered not for the truth of the matter asserted, but rather to refute this insinuation of fabrication. Wait. That is for the truth of the matter asserted. If you're refuting something that's being claimed, that is the truth of the matter asserted, isn't it? Well, Your Honor, it's not being offered to prove that those, Your Honor, it's offered for a purpose other than to prove the matter of asserted. It's being offered to refute this allegation of fabrication. There's a difference between that. There's a difference between the truths. One is the truth against assertion. One is the truth that it happened, right? In other words, it's not an admission by a party opponent. It's not an exception in the hearsay rule, but if you're using it as substantive evidence to refute what they say happened, isn't that substantive? It's a non-hearsay purpose because you're refuting an allegation as opposed to saying this is what happened. Instead of saying this is what happened, you're saying she wasn't lying. These are the reasons why she wasn't lying. Oh, barrier of credibility. Correct, Your Honor. Okay. And that relates explicitly to the trial court's ruling that the testimony of the conversation was admissible, and that ruling came out during the sidebar during opening statements. So that's going to be a credibility ruling. Correct, Your Honor. Okay, great. And then the statements were also relevant to prove the effect on the listener, to prove why Amanda acted as she did subsequently, and so that is another non-hearsay purpose for which this testimony had been admitted. But Justice Chapman was asking you to focus on the substantive allegations. What were those? Well, Your Honor, the State's review of the record did not reveal any inadmissible hearsay that was elicited by the State. The defendant did not point to any specific pages of the record wherein the State elicited hearsay statements from any of the witnesses, and so the State's position is that it did not elicit hearsay statements from its witnesses. I guess I misunderstood you then. My apologies, Your Honor. The defendant also mentions Amanda's testimony that she took V.S. to confront the family, that V.S. told them what had happened, and that V.S. relayed the allegations to her stepfather. However, these are not hearsay because they are not a repetition of an out-of-court statement. Instead, those relate to Amanda's personal observations, and thus that does not constitute inadmissible hearsay either. And finally, the reference to Detective Gusentine's testimony that V.S. relayed her allegations to the CAC counselor was likewise elicited by defense counsel on cross-examination, not by the State. The defendant therefore fails to persuade that the State elicited any hearsay statements from V.S. or any of the other witnesses, and therefore fails to prove that that was an error at trial. So I just want to make sure because I may have misunderstood too. So in the record, 1172, 1073, and 1103 are all introduced by the defense. Ms. Thien, T-H-I-E-N. I'm sorry? That's the State or the defense? Ms. Thien. Ms. Thien would have been the defense counsel, yes, Your Honor. Mr. Zanotti would have been the State's attorney. Okay. So there were some references when they're talking about the child at the stipulation, for example. That was not, I thought that was very interesting. The judge did not allow video clip to be used. There had to be a stipulation in it. Correct. My reading of the record made it seem as though the trial court was more concerned about time constraints and therefore felt that a stipulation would be more appropriate under these circumstances as opposed to taking time to view the entire video. Well, that clip could have been done, but the stipulation was that the child was interviewed and she did not disclose any incident with David Olson occurring in a shed outside the auction house. That was, again, a credibility issue? That was, I suppose it would have been a credibility issue. However, that stipulation was created, again, at defense counsel's request, not at the State's request. Well, the defense counsel wanted to show the video clip. Correct, Your Honor, for credibility. And that was denied. Correct, because defense counsel wished to impeach V.S. as opposed to, it was not the State's attempt to have this testimony brought in or have this video played. This was all at defense counsel's request. The State cannot, defendant cannot proceed a trial and then later complain on appeal that those types of issues were, that that was erroneously admitted. When defense counsel asks for the stipulation and asks for the video to be played, that complaining about it on appeal would constitute invited error. That cannot be the basis for defendant's assignments of error in this case. So your position, the State's position is that there's not going to be any indication that this child's testimony was used contrary to the statute. That is, the out-of-court statements concerning this abuse would have been substantive. There's not going to, we're not going to see any of that. The Child Advocacy Center lady is not going to say this is what she told me? It's the State's position the defendant failed to point to any specific statement in the record wherein the State elicited inadmissible hearsay from any witness. Instead, the State's, or the defendant's argument only pointed to statements that were elicited by defense counsel. Okay, but we can look to the entire record as an out-of-court. Yes, Your Honor. So my point is, so Child Advocacy Center person, for example, did she get up and say this is what the child told me? I believe so, yes. Do you see any room for the court not to have this hearing if statements are going to be brought in substantively? Your Honor, the statute was designed for a reason. There's no dispute that the hearing did not occur in this case. Don't you think it was designed for due process protections? Yes, Your Honor. Okay. Yes, it was designed to, for a due process issue, or to, excuse me, it was designed to protect due process. However, in this case, the State clearly did not anticipate using hearsay statements and therefore did not request for this hearing to occur. Moreover, as Your Honor noted, defense counsel did not object to any of the statements and therefore we have a forfeiture issue as well. Okay. So if there are no further questions, the State will hang up first. Thank you. Okay. Mr. Marchuk? Yes, just briefly. What do you think about the substantive issue? Was there any substantive evidence used? I think there was. I think that under the terms of the statute, this court should infer that the burden rests with the State in order to use these statements as substantive evidence of guilt. Which statements were substantive? Sure. Defendant's opening brief, page 10, includes pin cites to all of them. But again, these are... Okay, but tell us about that because that's what we're concerned about. The statements in particular... Do I have to pull the brief or can you tell me? Oh, no, sorry, I was about to. Yes, I just wanted to give you an anchor. Go ahead. Two statements from V.S. I told my mother, I told my counselor. That's 1058 and 1059, pin cites. V.S.'s mother, there's five statements. V.S. told me. That's the testimony between 994 and 1004. V.S. told my husband. That's 998. V.S. told her aunt, 999. This is the mother? Yes, exactly, yes. V.S. told her grandmother. That's 1001. V.S. told her god family. That's 979 to 980, 987. That really is the most troubling one. It amounts to sort of an extrajudicial trial that the mother was not only describing but also functioning as sort of a juror at large and describing to the actual jury what happened and why V.S. was credible. And then the final statement is from the detective. V.S. told her counselor. That appears on 1099, 1103, and 1110 to 1111. So I think that under the statute, the burden is on the state, the proponent. The part of it wants to use these statements as substantive evidence. The state submitted the proper jury instruction, but the thing is hearing never happened. And that's the biggest problem. And I think that sort of more or less. I'm sorry. What's the biggest problem? Is that this reliability hearing did not happen. And I think that moreover, from like sort of a 35,000-foot perspective, the state's argument runs up against another issue, which is that if defense counsel really wanted these statements to be used as substantive evidence of her client's guilt, that is bedrock ineffective assistance. I don't think we have that on this record. I think that the post-trial motions were clear that counsel wanted to use this for impeachment purposes. But the state's argument kind of runs up against these two issues, namely the statute's clear, the burden's on the state, and if defense really did this, wanted to convict their own client without a court statement, that is ineffectiveness, you know, full stop. So I think that, you know, as this court knows, evidence can be brought in for multiple purposes. The fact of the matter remains that the state uses this as substantive evidence of Mr. Olson's guilt. There is no reliability hearing. And I think very troublingly, the state repeatedly had V.S.'s mother comment on her credibility during these out-of-court accusations, in essence, knocking the fact-finding off balance. These are issues for the jury. This is not historically reliable evidence, and a new trial really is the proper remedy in this situation. If there are no other questions. I do have one question. Why is it, I presume you don't think this was closely balanced, or do you? I do think that this case is closely balanced. Tell me then why. Sure. This case is closely balanced because it depended on V.S.'s credibility. And V.S. was internally inconsistent, and the state repeatedly relied on her out-of-court accusations for substantive evidence of guilt. Again, there's no physical evidence, no witnesses, no admissions. The outcry wasn't spontaneous. V.S.'s testimony, inconsistent internally, and arguably inconsistent with her own family members, who, again, remember, this abuse had been allegedly going on for years. Family members said, I never suspected anything. Only on hindsight, after we heard that first accusation, some events seemed a little weird, possibly. Not really. There was no indication from the family members that they suspected years-long abuse, which is really at the heart of the state's case. This was fundamentally a case about V.S.'s credibility, and the errors in this case went fundamentally to that assessment. Thank you. No, that's fine. Thank you. Thank you. Okay. Thank you very much. All right. This matter will be taken under advisory, and we'll issue a disclosure in due course. Thank you.